**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward B. Engels,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-19-01527-PHX-SPL<br><br>**ORDER** |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), the Commissioner's Response (Doc. 20, "Def. Br."), Plaintiff's Reply (Doc. 23, "Reply"), and the Administrative Record (Doc. 9, "R."). For the following reasons, the Court will affirm the decision.

**I.    BACKGROUND**

Plaintiff filed his application on September 23, 2014, alleging disability as of February 22, 2014. (R. at 15.) Following denial of the application at the initial and reconsideration levels, a hearing before an administrative law judge ("ALJ") was held. (*Id.* at 15, 34–60 [transcript].) The ALJ found Plaintiff not disabled in a written decision that was upheld by the Appeals Council and thus the final decision of the Commissioner. (*Id.* at 15–25 [decision], 1–3.)

Therein, the ALJ found Plaintiff had "severe"[1] impairments of familial cardiomyopathy status post myocardial infarction, chronic obstructive pulmonary disease (COPD), and obesity. (*Id.* at 18.) Despite these impairments, the ALJ found:

> [Plaintiff] has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except he could never climb ladders, ropes, or scaffolds. [He] can frequently climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. He can have occasional exposure to pulmonary irritants such as fumes, odors, dusts, gases. [He] can have occasional exposure to poorly ventilated areas and no exposure to dangerous machinery or unprotected heights.

(*Id.* at 20.) Based on this RFC assessment and testimony from a vocational expert ("VE") (*Id.* at 52–53), the ALJ found Plaintiff could perform past relevant work as a sales representative for telephone services and was therefore not disabled. (*Id.* at 24–25.)

## II.  LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court reviews only issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the

---

[1]  An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled *per se*. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

. . .

. . .

### III.   ANALYSIS

#### A.   The ALJ Committed No Harmful Error In Evaluating Dr. Rakkar's Opinions.

Plaintiff's first assignment of error is that the ALJ improperly rejected and/or ignored opinions from his primary care provider, Dr. Navjot Rakkar, M.D. (Pl. Br. at 7–18.) The record contains six statements from Dr. Rakkar. The first three are standardized forms she completed for Assurity Life Insurance Company for Plaintiff's claim of continued disability. (R. at 177–78, 200–01, 1292–93.) In each, Dr. Rakkar opined that Plaintiff could never return to work and had a "Class 5" physical impairment, meaning "[s]evere limitation of functional capacity [and] incapable of minimal (sedentary) activity." (*Id.* at 178, 201, 1293.) The fourth is a "No" response to an inquiry of whether Plaintiff is able to perform full-time work. (*Id.* at 1355.) The fifth is an assessment of Plaintiff's mental residual functional capacity in which Dr. Rakkar opined Plaintiff had various moderate and marked limitations in functional areas such as making simple work-related decisions and carrying out detailed instructions. (*Id.* at 1289–91.) The sixth and final statement is an assessment of Plaintiff's physical residual functional capacity in which Dr. Rakkar limited Plaintiff to 3 hours of sitting, 2 hours of standing/walking, occasional stooping and crouching, frequent lifting/carrying of 5 pounds or less, occasional lifting/carrying of 6 to 20 pounds, and no lifting/carrying of more than 20 pounds. (*Id.* at 1288.)

An ALJ is required to evaluate every medical opinion in the record and assign a weight to each. 20 C.F.R. § 404.1527(c). Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight.[2] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

---

[2]   A treating source's opinion is given "controlling weight" when it is "well-supported" by objective medical evidence and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This is not the case here.

An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The ALJ must do more than state conclusions. He [or she] must set forth his [or her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* In evaluating a medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. An ALJ may properly reject a treating physician's opinion which is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). While the ultimate issue of disability is an administrative finding reserved to the Commissioner and not a "medical opinion," "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored."); *see generally* 20 C.F.R. § 404.1527(d).

Here, the ALJ gave "little weight" to Dr. Rakkar's opinions. (R. at 24.) The ALJ reasoned that the opinions were not consistent with the medical records and not supported by Dr. Rakkar's own clinical findings. (*Id.*) She noted that the opinions were not consistent with other providers' designation of Plaintiff's congestive heart failure as NYHA Class One and that Plaintiff repeatedly denied shortness of breath.[3] (*Id.*) Moreover, the ALJ found the opinions "vague," noting that they were of the "check-box" form and unaccompanied by any detailed explanation. (*Id.*) Lastly, the ALJ noted that Dr. Rakkar was a general family practitioner and not a specialist. (*Id.*)

---

[3] A designation of NYHA Class One corresponds with "no symptoms and no limitation in ordinary physical activity," *e.g.*, shortness of breath when walking, climbing stairs, *etc*. (R. at 1382.)

These reasons are specific, legitimate, and supported by substantial evidence. First, the ALJ properly discounted the opinions on account that they were vague and lacking in explanation. While an ALJ may not reject an opinion simply because it is in the "check-box" form, *see Burrell*, 775 F.3d at 1140, the ALJ may properly reject an opinion that is brief, conclusory, and unsupported by objective findings. *Id.* Dr. Rakkar's opinions are all three. The opinions themselves are devoid of any explanation of the limitations. Her treatment notes likewise fail to provide any meaningful insight and even contradict some of the opined-to limitations. For instance, despite opining that Plaintiff had carrying/lifting and standing/walking limitations, Dr. Rakkar consistently found a normal gait and normal strength in all extremities. She also made no findings supportive of the mental limitations. Thus, the ALJ did not err in affording lesser weight to Dr. Rakkar's opinions on account that they lacked both explanation and clinical support from her treatment notes. Additionally, the ALJ properly discounted Dr. Rakkar's opinions on account that she is not a specialist. Regardless of whether she is a general family practitioner, as asserted by the ALJ, or a specialist in internal medicine, as asserted by Plaintiff (Pl. Br. at 18), the dispositive fact is that she was not a specialist in the area of Plaintiff's impairments, specifically his heart condition, for which she deferred treatment of to Plaintiff's cardiological team, and his depression, which was managed by Plaintiff's psychiatric team. Next, the ALJ properly discounted Dr. Rakkar's opinions because Plaintiff denied shortness of breath. Plaintiff notes that the ALJ fails to cite to the records establishing this fact in her analysis of the opinions. (*Id.* at 17.) However, the Court does not find error here because elsewhere in the decision the ALJ cites to records establishing this fact. (*Id.* at 22.) In her opinion, Dr. Rakkar listed shortness of breath as one of Plaintiff's symptoms. (*Id.* at 1292.) Thus, the ALJ did not err in assigning lesser weight to the opinion on account of this inconsistency. And finally, the ALJ properly discounted Dr. Rakkar's opinions on account that they were not consistent with his cardiologist's designation of his congestive heart failure as NYHA Class One. (*See id.* at 1271, 1278, 1382, 1417.)

Turning now to Plaintiff's other allegation of error, the ALJ did not commit harmful

error in failing to explicitly address two of the three statements Dr. Rakkar made to Plaintiff's insurance carrier. (*See* Pl. Br. at 9.) Though the ALJ only cited one of these three statements in her rejection analysis, the two not expressly referenced are substantively identical to the one cited. (R. at 24 (citing R. at 1288–95); *compare* R. at 1292–93 *with* R. at 177–78, 200–01.) Thus, the ALJ's failure to explicitly cite to the other two is not of consequence to the overall nondisability determination and is therefore a harmless error.[4] *See Molina*, 674 F.3d at 1115 (stating that an error is harmless if it is "inconsequential to the ultimate nondisability determination") (citation omitted).

### B. The ALJ Did Not Err In Her Evaluation Of Dr. Littlefield's Opinion.

Plaintiff's second assignment of error is that the ALJ failed to include "significant" mental limitations allegedly assessed by consultative psychological examiner, Dr. Kenneth Littlefield, Psy.D. (Pl. Br. at 19.) The ALJ had found Plaintiff's mental impairments, including affective disorder and somatic symptom and related disorder, "non-severe." (R. at 18.) In concluding such, the ALJ noted that Dr. Littlefield did not note any mental limitations upon examination of Plaintiff. (*Id.* at 19.) Indeed, Dr. Littlefield specifically stated in his opinion, "Mental limitations were not noted." (*Id.* at 1076.) Dr. Littlefield found that Plaintiff "demonstrated the ability to understand simple instructions" and "no indication that [Plaintiff] would be unable to understand instructions given by an employer." (*Id.* at 1078.) He found that Plaintiff could "interact appropriately with the general public, ask simple questions, get along with coworkers, and maintain appropriate hygiene." (*Id.*) Nowhere in his assessment did Dr. Littlefield opine to *any* limitations, much less "significant" ones, and thus Plaintiff's allegation is without merit.

### C. The ALJ Properly Discounted Plaintiff's Self-Reports.

Plaintiff's third assignment of error is that the ALJ improperly rejected his self-

---

[4] The Commissioner maintains that these statements were not "medical opinions" and "not regarded as medical records" because of their placement in the "Non[-]Disability Related Development section" of the record. (Def. Br. at 25.) Regardless of what the Commissioner calls them here on appeal or where they are placed in the administrative record, they are opinions on the ultimate issue of disability which the ALJ could not ignore or disregard without providing specific and legitimate reasons. *Reddick*, 157 F.3d at 725.

reports regarding the severity of his impairments. (Pl. Br. at 19–24.) Specifically, Plaintiff argues that ALJ erred by "picking out a few isolated findings suggesting some improvement, while ignoring extensive evidence supported continued disability." (*Id.* at 20.) Plaintiff further asserts the ALJ erred by finding his activities did not support the alleged severity of his symptoms. (*Id.* at 22.)

Plaintiff alleged disability due to chest pain, shortness of breath, fatigue, lack of energy, and symptoms of depression and anxiety. (R. at 21; *see* R. at 218–20, 256–64.) At the hearing, the ALJ noted that Plaintiff's congestive heart failure was designated as NYHA Class One by his cardiologist and that his ejection fraction was normal. (*Id.* at 38; *see id.* at 1382.) Plaintiff acknowledged this improvement but testified that he still had "extreme" fatigue and adverse side effects from his medications, including headaches occurring 2-3 days a week which affect his concentration. (*Id.* at 38, 42.) He also testified that he only had 50% lung function due to his chronic obstructive pulmonary disease ("COPD") and that he can only walk 10-15 minutes before having problems breathing and needing a nap. (*Id.* at 38, 43.) He testified that he gets shortness of breath and dizziness from tying his shoes. (*Id.* at 43.)

Absent evidence of malingering, an ALJ may only discount a claimant's statements for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). And finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found Plaintiff's allegations of disabling symptoms and limitations inconsistent with the medical and other evidence of record. (R. at 21–23.) In particular, she found that Plaintiff's heart condition was adequately managed by medical therapies. (*Id.* at 23.) She noted a successful cardioversion and deployment of an intact defibrillator and pacemaker which resulted in "stable objective findings," including a normal ejection fraction of 55% as indicated by his most recent echocardiogram. (*Id.* at 22–23.) Moreover, she noted that Plaintiff denied chest pain, discomfort, palpations, and shortness of breath, cough, weakness, light-headedness, dizziness, lower extremity edema, and dyspnea. (*Id.* at 22.) She also noted that Plaintiff "received minimal conservative management for complaints of shortness of breath." (*Id.*) Lastly, the ALJ found that Plaintiff was "more active than alleged," noting that he "acknowledged a wide range of activities of daily living that included shopping in stores, going out alone, taking care of his own personal care, exercising, and going for walks." (*Id.* at 23.) She also noted that he traveled out-of-state and babysat his grandchildren, which "suggests that [his] fatigue and pain may not be disabling." (*Id.*)

These are specific, clear, and convincing reasons for discounting Plaintiff's testimony, and substantial evidence in the record supports each. More often than not,

1  Plaintiff denied symptoms related to his cardiac condition, such as shortness of breath,
2  chest pain, palpitations, and edema. (*See, e.g., id.* at 1271, 1279, 1402, 1395, 1263, 1222,
3  1258, 1246, 1379, 1413.) Occasions where he did report shortness of breath were isolated
4  and associated with "strenuous" activity. (*See, e.g., id.* at 1276, 1407, 1255, 1258, 1230.)
5  Accordingly, Plaintiff's condition was sometimes classified as NYHA Class Two,
6  corresponding with "slight limitation during ordinary activity" and "mild shortness of
7  breath and/or angina." (*Id.* at 1221, 1409.) However, as early as June 2015 and as recent as
8  May 2017, his condition was classified as NYHA Class One, meaning Plaintiff had no
9  symptoms and no limitation in ordinary physical activity, *e.g.*, shortness of breath when
10 walking, climbing stairs, *etc*. (*Id.* at 1271, 1278, 1382, 1417.) His chest pain was "atypical
11 and likely noncardiac." (*Id.* at 1382.) The objective echocardiogram evidence showed a
12 normal ejection fraction of 55% in June 2015 and improvement to 55-60% a year later. (*Id.*
13 at 1277, 1426.) Cardiologists noted his complaints of fatigue and believed that his
14 medications were the cause of it. (*Id.* at 1268, 1409, 1401.) However, as properly found by
15 the ALJ, "the evidence is not consistent with disabling fatigue." (*Id.* at 22.) As of May
16 2017, the cardiologist noted Plaintiff had been "doing well" and denied chest pain,
17 shortness of breath at rest and on exertion, orthopnea, PND, dizziness, presyncope, and
18 syncope. (*Id.* at 1413.)

19 Moreover, the ALJ properly found that Plaintiff's activity was inconsistent with the
20 degree of severity alleged. Providers noted that he exercised three times a week, 45 minutes
21 a day. (*Id.* at 1406.) The ALJ also referenced Plaintiff's self-reports wherein he reported
22 being able to "walk for about a mile and a half" in "about 30 to 45 minutes," which was
23 inconsistent with his hearing testimony. (*Id.* at 218.) "Even [though these] activities suggest
24 some difficulty functioning, they [are] grounds for discrediting [Plaintiff's] testimony to
25 the extent that they contradict [his] claims of a totally debilitating impairment." *Molina*,
26 674 F.3d at 1113. Therefore, Plaintiff's self-reports were properly discounted.
27 . . .
28 . . .

**D. The ALJ Committed No Harmful Error In Finding That Plaintiff Could Perform Past Relevant Work.**

Plaintiff's final assignment of error is that the ALJ erred in finding him capable of performing past relevant work as sales representative "as actually performed." (Pl. Br. at 24.) If a claimant retains the RFC to perform the "*actual* functional demands and job duties of a particular past relevant job" *or* the "functional demands and job duties of the occupation *as generally required* by employers throughout the national economy," he is not disabled. SSR 82-61, 1982 WL 31387, at *2 (emphasis added).

Here, the VE testified that Plaintiff's past job as a sales representative is generally performed at the light exertional level, per the *Dictionary of Occupational Titles* ("DOT"), but was actually performed by Plaintiff at the medium exertional level. (R. at 52.) Based on the RFC assessment described herein in which the ALJ restricted Plaintiff to light work, the VE testified that Plaintiff could perform the work of a sales representative as described by the DOT, *i.e.*, at the light exertional level. (*Id.* at 53, 20.) The ALJ mistakenly wrote that Plaintiff performed his past work as a sales representative at the light exertional level and therefore erroneously found that he could perform his past work "as actually performed." (*Id.* at 25.) Although Plaintiff cannot perform his past work as *actually* performed, given the ALJ's restriction to light work, he *can* perform it as *generally* performed per the VE's testimony, which is consistent with the RFC. Thus, substantial evidence supports the ALJ's finding that Plaintiff can perform past relevant work as a sales representative, which directs a finding of nondisability under SSR 82-61. The ALJ's mischaracterization of Plaintiff's past work is a harmless error. *See Molina*, 674 F.3d at 1115 ("We have . . . deemed errors harmless where the ALJ misstated the facts about the claimant, but we were able to conclude from the record that the ALJ would have reached the same result absent the error.").

. . .

. . .

. . .

1    **IT IS THEREFORE ORDERED affirming** the decision of the Commissioner.

2    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment
3    accordingly and terminate this case.

4    Dated this 1st day of June, 2020.

        Honorable Steven P. Logan
        United States District Judge